UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ABU HENDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:10-cv-1455-WTL-MJD |
| ) | |
| CITY OF INDIANAPOLIS ) | |
| DEPARTMENT OF PUBLIC WORKS, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on the Defendant's Motion for Summary Judgment (Dkt. No. 61). For the reasons set forth below, the Court now **GRANTS** the motion.

## I.   STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court accepts as true the admissible evidence presented by the non-moving party and draws all reasonable inferences in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II.     BACKGROUND

The facts regarding the termination of Henderson's employment, taken in the light most favorable to Henderson, the non-moving party, are as follow.[1] Additional facts relied on by Henderson are included in the discussion section where appropriate.

Plaintiff Abu Henderson, an African American male, began working for the City of Indianapolis (the "City") in the Department of Public Works ("DPW") in 1995. At all times relevant to the instant action, Henderson worked as "Crew Leader" in the Streets division of DPW and was paid on an hourly basis. Henderson's responsibilities as a Crew Leader included coordination of materials, equipment, and crew members. Henderson was also responsible for reporting daily production results and participating as a working crew member.

On August 2, 2010, Henderson received a work assignment directing his crew to perform surface repair work in the area of East 42nd and East 56th Streets in Indianapolis. Henderson instead directed his crew to obtain asphalt surface mix and report to 71st Street and Keystone Avenue. The crew obtained the asphalt and reported to the specified intersection at approximately 9:30 am.

When the crew arrived at 71st Street and Keystone Avenue, Henderson was not present. As the crew waited, a storm moved into the area. Henderson's crew contacted him for direction, and he instructed them to stay at their location and wait out the storm, which they did. After the storm passed, Henderson still did not arrive at 71st Street and Keystone Avenue. Crew members again contacted Henderson for direction, and Henderson directed them to take a lunch break.

At approximately noon, after the lunch break, Henderson met his crew at 71st Street and Keystone Avenue. At that time, he instructed the laborers to spread the three tons of asphalt they

---

[1] Henderson disputes little of DPW's statement of material facts, and the Court has adopted those facts where appropriate.

had collected in the alley behind the Speedway Gas Station on the northeast corner of the intersection. Henderson then instructed the crew members to cease any further work that day, to stay off their radios, and to report to the district garage at 2:45 pm.

A few hours later, at approximately 2:20 p.m., Henderson was driving a City vehicle near the intersection of 16th Street and Talbott Street when he was involved in a motor vehicle accident. This was Henderson's fifth motor vehicle accident in a City vehicle in thirteen months.

At the time of the accident, Henderson was driving to the PERF office near 16th and Talbott Streets for a meeting regarding retirement. This was outside the boundaries of his assigned work area for that day.[2] Henderson's shift was scheduled to end approximately one hour after the motor vehicle accident occurred, at 3:30 p.m.

As part of his responsibilities as a DPW employee, Henderson was required to submit daily work reports memorializing his hours, as well as the work he had performed, so he could be paid. Henderson's daily work report submitted for August 2, 2010, showed that he had performed and/or supervised surface repair work at four separate locations. The report accounted for eight hours of work.

When Gregory Morse, Henderson's direct supervisor, received documentation of Henderson's motor vehicle accident, he realized the inconsistency between Henderson's activities on that date and the work accounted for in Henderson's daily work report. Morse therefore decided to investigate Henderson's activities, which included a review of the accident report, interviews of the crew members, and an analysis of the work report. Henderson's crew members all confirmed that the work listed on Henderson's August 2 report was not performed

---

[2] The parties dispute whether Henderson had permission to go to the PERF office. The City notes that Henderson did not have permission to go to the office *that day*, but Henderson notes that his supervisor was aware that he had "ongoing business" with the office.

on that date. Further, Henderson's crew members reported that Henderson had directed them to spread the asphalt in an alley at 71st Street and Keystone Avenue and then cease further work that day and avoid radio contact until the end of the shift.

Based on his investigation, Morse determined that Henderson had falsified his August 2 report, he had not completed the work indicated on the report, he had directed his crew members not to perform their assigned duties, and he had been outside his assigned work area without his supervisor's knowledge or approval. Morse concluded Henderson's conduct violated the City's policies and Standards of Conduct and merited termination.

On August 4, 2010, Morse held a meeting with Henderson and his union steward, Dewayne Clemmons, concerning his report. At that meeting, Morse terminated Henderson's employment for violation of "Group IV; Rule B: Integrity, making a false report or statement to the job" of the collective bargaining agreement.[3] Morse noted that Henderson was outside of his assigned work area without authorization, was involved in a motor vehicle accident, and turned in false and misleading documentation that did not indicate the reason Henderson was out of his work area. Henderson was presented with a Notice of Termination, which he refused to sign.

On August 10, 2010, Henderson filed a Charge of Discrimination with the Indiana Equal Employment Opportunity Commission. Henderson claimed race discrimination as the reason for the termination of his employment. The EEOC determined that there was insufficient evidence to establish any statutory violations and issued a right to sue letter to Henderson on September 22, 2010. On March 10, 2011, Henderson filed the instant action, alleging that the City discriminated

---

[3] During his deposition, Morse testified that Henderson's employment would "probably not" have been terminated if he had properly documented that he was out of his work area.

against him due to his race and alleging that the City breached its collective bargaining agreement with Henderson's union, AFSCME Council 62 Local 75.[4]

### III.    DISCUSSION

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to discharge an employee on the basis of such individual's race. 42 U.S.C. § 2000e-2(a)(1). At the summary judgment stage, a plaintiff may raise the inference of discriminatory discharge directly or indirectly. "To avoid summary judgment under the direct approach, the plaintiff must produce sufficient evidence . . . to create a triable question of intentional discrimination in the employer's decision." *Silverman v. Bd. of Educ. of Chicago,* 637 F.3d 729, 733 (7th Cir. 2011). The plaintiff proceeds under the direct method by designating either direct or indirect evidence. Indirect or circumstantial evidence may be used to create a "convincing mosaic" of evidence indicating intentional discrimination by the decisionmaker. *Id.* at 734. Such circumstantial evidence "must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.,* 324 F.3d 935, 939 (7th Cir. 2003).

The "convincing mosaic" analysis uses three broad types of circumstantial evidence: (1) "suspicious timing, ambiguous statements [sic] oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn," (2) systematic better treatment of similarly situated employees who are not members of the protected class; and (3) "evidence that the

---

[4] During the course of proceedings, Henderson also asserted claims against AFSCME for discrimination and breach of contract, alleging that AFSCME failed to fully represent Henderson due to his race. Second Am. Compl. at 35, Dkt. No. 15. Those claims were dismissed pursuant to the parties' stipulation. Dkt. No. 54.

Henderson also included Indianapolis Mayor Greg Ballard in his official capacity as a Defendant in the caption of his Complaint, but Mayor Ballard was not included as a Defendant in the latest Amended Complaint. *Compare* First Am. Compl., Dkt. No. 7, *with* Second Am. Compl., Dkt. No. 15.

5

Case 1:10-cv-01455-WTL-MJD Document 73 Filed 12/19/12 Page 6 of 9 PageID #: 693

plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination." *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994). "Each type of evidence is sufficient by itself (depending of course on its strength in relation to whatever other evidence is in the case) to support a judgment for the plaintiff; or they can be used together." *Id.*

In response to DPW's motion, Henderson argues that he can present evidence of direct discrimination against him sufficient to survive summary judgment. Specifically, Henderson exclusively uses the "convincing mosaic" method to argue that he has put forth sufficient evidence of "a clear pattern" of "terminating African American employees like Mr. Henderson but not terminating Caucasian employees who engage in the same conduct." In support of this allegation, Henderson tells the stories of the following DPW employees.[5]

Ronnie Hall, an African American employee of DPW, was terminated in October 2010 after he briefly stopped by the union hall to check on a grievance. DPW claimed that Hall falsified his work log sheet because he did not indicate on his log sheet that he went to the union hall.

Eric Scott Pogue, a Caucasian employee of DPW, was terminated in 2009 for falsifying his work log. Eric Jackson, Pogue's African American manager, issued the termination. Leonard Addair, Jackson's Caucasian supervisor, reinstated Pogue and changed his termination to a three-day suspension.

Nick Boulse, a Caucasian employee of DPW, was suspended, but not terminated, in 2006 for falsification of a work record.

---

[5] For the purposes of its motion, DPW does not dispute any of the following evidence.

6

According to Henderson, the discriminatory pattern is not unique to falsification of work records:

Marilyn Hughes, an African American employee of DPW, was terminated in September 2009, after she was accused of threatening another employee.

Randall Irwin, a Caucasian employee of DPW, was terminated in December 2010 for intentionally inflicting bodily injury on another employee. Irwin was reinstated by Brian Lawrence, the same DPW administrator who terminated Hughes.

William O'Fallon, a Caucasian employee of DPW, was given a written notice, but not terminated, after he threw a broom at a coworker.

Marva Brown, an African American employee of DPW, was terminated in 2010 following an investigation into whether she lived in Marion County. Although Brown submitted documentation attesting to her residence in Marion County, her employment was terminated, in part because DPW believed that she was claiming a homestead credit on property located in Hendricks County.

Leonard Addair, a Caucasian employee of DPW, was not terminated after a 2011 investigation indicated that Addair resided in Morgan County.

Spencer DeVaney, a Caucasian employee of DPW, was terminated, but then reinstated, in 2009 after an investigation indicated that he lived in Hendricks County.

Finally, Henderson points the Court to the following statistics: From 2006 to 2011, twenty African American DPW employees were terminated and eleven Caucasian DPW employees were terminated. In addition, of the twenty African American employees terminated, three were overturned. Of the eleven Caucasian employees terminated, three were overturned.

Henderson attempts to bring the designated evidence under the first category of circumstantial evidence – "suspicious timing, ambiguous statements [sic] oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent may be drawn." He then notes that, under this category, "[a]n employee using the direct method of proof does not have to prove that employees are similarly situated." In so doing, Henderson acknowledges that the employees described above are not similarly situated: "Defendant may argue that these individuals are not similarly situated; they did [not] deal with the same supervisor and, in several cases, they engaged in different misconduct." However, given Henderson's description of the evidence as revealing a "clear pattern" of discrimination, it seems to the Court that his evidence more properly falls under the second category – evidence that similarly situated employees outside the protected group received systematically better treatment – which category of course explicitly requires similarly situated employees. And yet, regardless of which category the evidence falls under, the result is the same: suspicious behavior is not evidence that Henderson was subjected to a discriminatory employment decision when there is no indication that he was subject to a common decisionmaker somewhere in the chain of command. Likewise, sheer numbers without context[6] do not speak to whether Henderson was subjected to illegal discrimination. Labels aside, the evidence Henderson has designated does not point directly to a discriminatory reason for DPW's action, and no jury could reasonably infer discriminatory discharge on this evidence alone. DPW is therefore entitled to summary judgment on Henderson's discrimination claim.

Henderson also alleges that the City breached its collective bargaining agreement with his Union, AFSCME Council 62 Local 725, because his termination was arbitrary and capricious

---

[6] DPW attempts to give context to these numbers through the testimony of Twana Ellis, but the record citation does not support the testimony attributed to Ellis.

8

and constituted discrimination on the basis of race. DPW has moved for summary judgment on this claim; Henderson has not responded as to this claim. Following the analysis above, the Court has already found that Henderson has not designated evidence sufficient to support his discriminatory termination claim. Accordingly, his breach of contract claim for discriminatory termination fails as well. With respect to the allegation that DPW's termination of Henderson's employment was otherwise arbitrary and capricious, the record does not reveal any evidence in support of this claim. DPW is therefore entitled to summary judgment on Henderson's breach of contract claim as well.

## IV. CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment is **GRANTED**.

SO ORDERED: 12/19/2012

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.